IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. 10-00064 |
| v. | * | |
| | * | |
| ERIK ADAMS | * | |

## FACTUAL RESUME

The defendant, **ERIK ADAMS**, admits the allegations of Count One of the Indictment, charging a violation of 18 U.S.C. § 1349, conspiracy to commit wire fraud and mail fraud, Count Two charging a violation of 18 USC §1341, Mail Fraud, and Counts Three through Six, charging violations of 18 USC §1343, Wire Fraud. As to Count Seven, the forfeiture notice, **ADAMS** also consents to the entry of a Preliminary Order of Forfeiture.

## ELEMENTS OF THE OFFENSE

**ADAMS** understands that in order to prove a violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment, the United States must prove:

First: That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the Information; *Indictment* (handwritten)

Second: That the Defendant, knowing the unlawful purpose of the plan, willfully joined in it.

**ADAMS** understands that in order to prove a violation of Title 18, United States Code, Section 1341, mail fraud, as charged in Count Two of the Indictment, the United States must

1

prove:

First: That the defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises;

Second: That the false or fraudulent pretenses, representations or promises related to a material fact;

Third: That the defendant acted willfully with an intent to defraud; and

Fourth: That the defendant used a private or commercial interstate carrier by depositing or causing to be deposited some matter or thing to be delivered by the carrier for the purpose of executing the scheme to defraud.

**ADAMS** understands that in order to prove a violation of Title 18, United States Code, Section 1343, wire fraud, as charged in Counts Three through Six of the Indictment, the United States must prove:

First: That the Defendant knowingly devised or participated in a scheme to defraud, or for obtaining money or property by means of false pretenses, representations or promises;

Second: That the false pretenses, representations or promises related to a material fact,

Third: That the Defendant did so willfully and with an intent to defraud; and

Fourth: That the Defendant transmitted or caused to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud.

2

## OFFENSE CONDUCT

Defendant, **ADAMS**, admits in open court and under oath that the following statement is true and correct and constitutes the evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **ADAMS'** plea of guilty. The statement of facts does not contain each and every fact known to **ADAMS** and to the United States concerning the defendant's involvement in the charges set forth in the indictment.

At the times alleged in Count One of the Indictment, Jennifer Cox and Sara Morris worked for **ADAMS,** who owned the Pensacola Guarantee Mortgage (PGM) Company in Pensacola, Florida. From as early as August of 2002 through and including August of 2007, **ADAMS** and other members of the conspiracy recruited straw buyers to submit false loan applications to mortgage lenders and financial institutions for the purchase of condominiums in the Southern District of Alabama and elsewhere. **ADAMS** offered to make the down payment on the purchases and/or pay all, or a major portion of, the monthly mortgage payments. The straw buyers would receive a percentage of the profits when **ADAMS** sold the condominiums. **ADAMS** intended to resell each condominium at a profit after the straw buyer closed on the condominium so as to further the scheme.

To carry out the scheme, **ADAMS'** co-conspirators prepared loan applications containing false financial information and/or failed to disclose that **ADAMS** would be making the mortgage payments rather than the straw buyers so loans would be approved. The loan applications were then faxed, delivered by commercial interstate carrier, or e-mailed from Pensacola, Florida to mortgage lenders and financial institutions and title companies in the Southern District of Alabaman and elsewhere. Thereafter, in furtherance of the scheme, **ADAMS**, Morris, Cox and

other members of the conspiracy caused information and/or documents to be faxed, delivered by commercial interstate carrier, or e-mailed back and forth between Pensacola, Florida and the Southern District of Alabama and elsewhere.

**ADAMS** represented that his mortgage company was the original lender on the mortgages. He resold the mortgages to mortgage lenders or financial institutions to whom the loan applications were faxed, e-mailed, or delivered by commercial interstate carrier. Had the mortgage lenders and financial institutions known the true financial status of the straw buyers or that the straw buyers would not be making the mortgage payments themselves, the loans probably would not have been approved.

After a loan was approved and a condominium purchased, **ADAMS** would direct Morris to pay the amount of, or a large percentage of, the monthly mortgage payment to the straw buyer who would then pay the mortgage to the mortgage lender or financial institution. **ADAMS** resold the condominiums as quickly as possible and split a percentage of the profits with the straw buyers. Ultimately, **ADAMS** could not resell all of the condominiums and then pay all the mortgages. A number of the properties were foreclosed and the mortgage lenders and financial institutions suffered losses.

Morris held a straw mortgage in her name for **ADAMS.** Her down payment on this mortgage was provided her by **ADAMS.** Morris deposited the money into her bank account and then, used those funds at the closing so it would appear that she had made the down payment using her own funds.

The closing documents for J.C., referenced in Count Two of the Indictment, for whom **ADAMS** was to make the mortgage payments, were sent to J.C. in Jacksonville, Florida from

Gulf Shores, Alabama by UPS, a commercial interstate carrier

Counts Three and Four involve faxes sent to an appraiser in Mobile from PGM in Pensacola, Florida, signed by a member of the conspiracy, requesting an appraisal on condominiums for straw buyers. Count Five involves an e-mail from PGM sent to **ADAMS**, and to one of the closing companies in Gulf Shores, concerning "clearing" a property in a straw borrower's name to close.

**ADAMS** told S.P. he would make the mortgage payments on any condominiums Mr. and Mrs. P. purchased until the properties sold. In July of 2006, Mr. and Mrs. P. purchased a condominium in Gulf Shores, Alabama, for $392,000.00 and **ADAMS** made the mortgage payments on the property until December of 2006. The condo was ultimately foreclosed. The loan application showed that Mr. and Mrs. P. provided the down payment for the condo purchase. However, the money for the down payment was provided to them by **ADAMS**. **ADAMS** signed the L.A. Title Company Closing Statement and Settlement Statement on this property. An e-mail from the PGM closing department to **ADAMS** and to the title company in Gulf Shores, Alabama, forms the basis for Count Six. The e-mail notifies the title company that Mr. and Mrs. P.'s property is "Cleared to Close."

During the conspiracy and in furtherance of the scheme, on or about December 6, 2006, an e-mail concerning the closing of a condominium in Gulf Shores, Alabama was sent from a Title Company in Gulf Shores, Alabama to **ADAMS'** mortgage company in Pensacola, Florida. During the conspiracy and in furtherance of the scheme, on or about July 25, 2006, closing documents, pertaining to the purchase of a condominium in Gulf Shores, Alabama, were transported by UPS, a commercial interstate carrier, from a Title Company in Gulf Shores,

Alabama to a straw buyer in Florida.

AGREED TO AND SIGNED.

Respectfully submitted,

KENYEN R. BROWN

UNITED STATES ATTORNEY

Date: 8/26/10                By: *(signature)*

DEBORAH A. GRIFFIN

Assistant United States Attorney

Date: 8/27/10                *(signature)*

ERIK ADAMS

Defendant

Date: 8/27/10                *(signature)*

FRANK RUBINO

Counsel for Defendant